# Town Meeting Party Nomination Papers (No. 1).

*Elections—Nominations — Candidates — Official ballot — Party nominees.*

Under the Act of April 29, 1903, P. L. 338, relating to elections,

a person who has been nominated for public office by a political party at a primary election, may also be nominated by a political party subsequently formed, by means of nomination papers, and is entitled to have his name printed in the party column of each party which nominates him.

Argued Nov. 1, 1917. Appeal, No. 309, Jan. T., 1917, from order of C. P. No. 3, Philadelphia Co., Sept. T., 1917, No. 4104, sustaining objections to nomination papers, In re Nomination Papers of Town Meeting Party Purporting to Place in Nomination Francis F. Burch, W. T. Colburn, Dennis J. Grace, Louis Karstaedt and I. Walter Thompson, for the Offices of Councilmen for the Forty-Sixth Ward of the City of Philadelphia. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZIS-KER and WALLING, JJ. Reversed.

Objections to nomination papers.

The facts appear in the following opinion by WESSEL, J., specially presiding; CARR and DAVIS, JJ., concurring:

On September 19, 1917, the Washington Party was entitled to nominate candidates for Common Council, in the 46th Ward of this city. On that day the qualified electors of that party in that ward, placed in nomination, inter alia, Francis F. Burch, W. T. Colburn, Louis Karstaedt, and I. Walter Thompson for the offices of Common Councilmen. Subsequently the same men were nominated for the same offices by nominators who desire them placed in nomination under the title which had been preëmpted in that ward as the "Town Meeting Party." This is objected to, it being contended that when a person is designated by a regular political party as its candidate for a designated office, and such person does not decline such nomination other electors cannot, by an independent nominating petition secure a duplication of his name upon the ballot, under some other appellation. This objection is supported by Commonwealth v. Martin, 21 Pa. C. C. Reps. 422 (1898). That was a petition for a peremptory mandamus against the

secretary of the Commonwealth, to require him to file certain nomination papers. It appeared that the petitioner, and other qualified electors of this State, constituting in number more than two per cent. of the largest entire vote cast for any officer elected at the last preceding State election, signed a nomination paper for the purpose of placing in nomination for the office of governor, William A. Stone; for the office of lieutenant-governor, J. P. S. Gobin; for secretary of internal affairs, James W. Latta; for congressman-at-large, Galusha A. Grow and Samuel A. Davenport; for judges of Superior Court, W. W. Porter and W. D. Porter. That nomination paper thus signed was duly presented on October 4th to the defendant, David Martin, Secretary of the Commonwealth, at his office in the City of Harrisburg, for the purpose of having the same filed in accordance with the law. He refused to receive or file said paper. The candidates presented by that nomination paper, had previously been nominated by the State convention of the Republican party, and its nomination for the same several and respective offices for which they had been named had been duly certified to the secretary of the Commonwealth in such a way to secure a place for their names on the official ballot. In refusing the petition, Mr. Justice STEWART (then specially presiding as President Judge of the 39th Judicial District), said (p. 423):

"In another proceeding determined only yesterday, in which we adjudged invalid the certificate of nomination, filed on behalf of the same political party that has offered this nomination paper, we endeavored to point out the distinction made by the law between political combinations, some of which are to be regarded as parties, and others, lacking certain characteristics as less than parties. The second section of the Act of July 9, 1897, P. L. 223, known as the ballot law, relates wholly and exclusively to political combinations which the law regards as parties, and so designates them. The third section makes provisions for such combinations as are less than

parties, and such are referred to as political bodies. The word party nowhere occurs in this section.

"The distinction thus made in the act governs not merely in procedure, but the rights and powers of these different political combinations with respect to the official ballot are determined therefrom.

"A political party—that is a party within the legislative sense—has a right to have a separate column on the ballot for its own ticket, and it is a matter of no concern to the law, so far as regards the composition of the ballot, who compose that ticket, whether it includes the same names that appear on the other tickets or not. It is an unquestioned right that each party has to name its own ticket and constitute it as it pleases.

"But with respect to combinations, which are less than parties, the law is different. When either of the established and recognized parties has placed a candidate in nomination for a particular office, and has secured for such candidate a place on the official ballot, what possible end is served by allowing the same name to again appear in connection with the same office by virtue of nomination papers? Once upon the ticket every elector will be afforded the privilege of voting for this particular person in a sufficiently convenient way. It is no answer to say that it would be helpful to the political body that asks the privilege. The law was not designed to advance the interests of political combinations, but to secure a safe and convenient ballot, that in its turn would secure an honest and intelligent expression of the popular will. It regards a mere political combination, —one less than a party—as a body of dissenters, and affords them facility for expressing their dissent on the official ballot by placing thereon a candidate; but it must be a candidate not already nominated by the party. The manifest purpose of Section 3, of the act we are considering, was to insure to the electors of the State a liberty which no party discipline could hinder or restrain and to enable them to attempt at least by the use of the

common ballot, the accomplishment of something that no party has provided for. Beyond this it does not go. There is room on the official ballot for the ticket of any party; there is likewise room for any candidate not included in one or the other of the party tickets, who may be placed in nomination by nomination papers, and thus every political combination is provided for, as we still have a ballot reasonable in size and readily understood by the average voter. But if once we allow that candidates nominated by a party may be nominated again and again by nomination papers, the result would be a ballot impracticable and unintelligible to the ordinary understanding."

But the nominators contend that that decision is not controlling, because of the subsequent legislation. They urge that the law, as then construed by Mr. Justice STEWART, has been changed by the Act of April 29, 1903, P. L. 338, which provides, in its second section (which amends the 14th section of the Act of June, 1893, as amended), inter alia, (p. 342): "Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the names of each political party, so nominating him, shall be printed to the right of the name of such candidate, arranged in the same order as candidates' names are grouped."

With this contention we are unable to agree. Justice STEWART's decision was rendered in 1898. The legislation which was enacted some five years later, did not amend either the second or third sections of the Acts of 1893, as amended by the Act of 1897, then construed. The amendatory Act of 1903 merely cites and amends the ninth, fourteenth, twenty-second, twenty-seventh, twenty-eighth and thirtieth sections of those acts. Those amendments relate to the duties of certain officers; to the form and arrangements of the ballots; to the duties of the voter in the polling place; to the counting of the votes and the preservation of the ballots. But those amendments make no change in the legislation, designat-

ing by whom and in what manner nominations may be
made.  A second section of that act designates who shall
be entitled to file nomination papers: Butler Township
Republican Nomination Papers, 14 Pa. C. C. Reps. 470
(1894).

It is also apparent from the part of the paragraph of
the Act of 1903, above quoted (P. L. 342), that the legis-
lature was considering then not the rights of the per-
sons exercising their prerogatives as nominators but the
arrangement of the ballot as regards those candidates
who should have received the nomination of more than
one "Political Parties."  That there is a clear distinction
between such a body and those placing electors in nomi-
nation by nominating papers, appears from Mr. Justice
STEWART'S opinion In re Citizen Party Nominations, 21
Pa. C. C. Reps. 417 (1898), where he says (p. 418) :

"While our legislation recognized political combina-
tions, it has nothing to do with their creation, continu-
ance or dissolution.  Not being born under the law, they
are not subject to it.  They are left free to govern them-
selves and regulate their own actions.  The law does not
compel the citizen to attach himself to any; he may or
may not, as suits his pleasure.  When he does the law
has nothing to do with the terms or conditions of his
membership.  It takes no notice of his standing in the
society, except it be official, and then only in a single
case, and cares nothing whether he gives much or little
support, whether he votes its ticket straight or scratched
regularly or only occasionally.  The measure of his ac-
tivity and allegiance concerns only himself and the
party.

"But this indifference of the law ceases when the
action of a political combination brings it into relation
with what is known as the official ballot.  When an as-
sociation or combination of electors demands for its
candidates a place on the ballot, and its right to this
is challenged, the law concerns itself to inquire just

what its rights are, and this involves an inquiry into the composition and character of the combination.

"It is with combinations that the law deals, not the individual elector, in such questions, and with respect to the former, it makes its own distinctions. All political combinations are not alike—that is, not of like grade, and their rights differ correspondingly.

"One clear distinction the law makes between combinations which are parties, and those which are less than parties. Every party is necessarily a combination, but the converse that every combination is a party, is very far from being true. The distinction is easily discoverable in the different provisions which are made for each kind of combination in the Act of 1893 as amended by the Act of 1897, and known as the ballot law.

"The combination which is a party places its candidates in nomination by a proceeding wholly different from that which a combination less than a party must follow to accomplish the same object. The former files certificates of nomination, the latter nomination papers, a difference of sufficient importance to provoke the present controversy.

"Since it is the legislative understanding of what is meant by the term political party that is to govern, it cannot be in the least helpful to have recourse to the lexicographers. We shall find no definition that expresses the legislative idea. For instance, an admitted essential feature of a political party within legislative meaning, that it shall have polled a certain per centum of a certain vote cast at the next preceding election. We shall not find that expressed in any definition.

"To discover what is meant by the term we are thrown back upon the act or series of acts which relate to the general subject, and to these we are confined. Confessing our inability to put it all within the limits of a definition, we can yet indicate certain essential characteristics which are sufficient for present purposes. We have already referred to one—the combination must

have polled a certain proportion of the highest vote cast at the next preceding election. Another is, that it must, in its aims and purposes, be as broad as the State itself. That is to say, its purpose must be to accomplish results affecting and concerning the entire citizenship, as distinguished from the particular section or district. Not that it must have supporters in every political subdivision of the State; it may have them in but a single county, and yet be a political party; but its object must be of general concern, so that it can invite to its support the people of the State, irrespective of locality. Where both these features are found in any combination, it is a party within the legislative meaning; where either is lacking, it is a combination less than a party." To that may be added the opinion of Judge WEISS in Jeffries' nomination, 24 Pa. C. C. Reps. 529 (1900); Judge PENNYPACKER'S opinion In re McKinley-Citizen's Party, 19 Pa. C. C. Reps. 132 (1896); and In re Public Opinion Party, 27 Pa. C. C. Reps. 145 (1897); Judge MC-MICHAEL'S opinion In re Citizen's Party Nomination, 22 Pa. C. C. Reps. 65 (1898); Judge SIMONTON'S opinion in Handley v. Reeder, 18 Pa. C. C. Reps. 456 (1896).

The subject is an important one. We regret that the necessity for an immediate decision has limited our research to a few hours. Our conclusions may cause the electors to exercise a little more care and to expend some additional time in the marking of their ballots, but they may still vote for the nominee above referred to, if they be their choice.

The court sustained the objections filed by James A. Walker, E. S. Krombolz and R. Emmett Dillon to the nomination papers of the Town Meeting Party, placing in nomination Francis F. Burch, I. Walter Thompson, Louis Karstædt and W. T. Colburn for the offices of common councilman in the Forty-sixth Ward of Philadelphia, and restrained the county commissioners from printing the said Town Meeting nominations upon the official ballot for said ward. Francis F. Burch, W. T.

Colburn, I. Walter Thompson and Louis Karstædt appealed.

*Errors assigned* were in sustaining the objections and the order of the court.

*Isidore Stern* and *James Gay Gordon,* for appellants.

*Thomas James Meagher,* for appellees.

Per Curiam, November 1, 1917:

In entering its decree the learned court below regarded as controlling what was said by our Brother Stewart in Commonwealth v. Martin, 21 Pa. C. C. Reps. 422, when he specially presided in that proceeding in the Court of Common Pleas of Dauphin County. Under legislation passed five years later—the Act of April 29, 1903, P. L. 338, the appellants have the right denied them by the decree from which they have appealed. In view of that legislation the decree of the court below is reversed and, now, November 1, 1917, upon due consideration, it is ordered, adjudged, and decreed that the objections filed by James A. Walker, E. S. Krombolz and R. Emmett Dillon to the nomination papers of "The Town Meeting Party," placing in nomination Francis F. Burch, I. Walter Thompson, Louis Karstædt and W. T. Colburn for the offices of common councilmen in the Forty-sixth Ward of the City of Philadelphia be dismissed and, it is further ordered, adjudged, and decreed that the county commissioners print the names of the said "Town Meeting Party's" nominees upon the official ballots for said ward, the costs on this appeal and below to be paid by the County of Philadelphia.